# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**REBECCA, C.[1]**,

        Plaintiff,

   v.

**KILOLO KIJAKAZI,** Acting
Commissioner of Social Security,

        Defendant.

Case No. 2:20-cv-2026-SI

**OPINION AND ORDER**

Bruce W. Brewer, PO Box 421 West Linn, OR 97068. Of Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff Rebecca C. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and for supplemental security income (SSI) under Title XVI the Act. For the following reasons, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. ,Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff filed an application for DIB on February 28, 2018, and an application for SSI on April 30, 2018. AR 232-34, AR 221-31. Plaintiff alleged a disability onset date of December 31, 2010. Plaintiff later requested to amend her alleged onset date to February 2, 2018, but the Administrative Record does not reflect the change. AR 243, 16. Plaintiff was born on December 10, 1983 and was 27 years old as of the amended alleged disability onset date. AR 26. Plaintiff's DIB claim was denied initially on September 9, 2018 and upon reconsideration on November 20, 2018. AR 146, 158. Plaintiff's SSI claim was denied initially on September 21, 2018, and upon reconsideration on November 20, 2018. AR 151, 161. Plaintiff requested a hearing before an ALJ, at which Plaintiff testified on February 4, 2020. AR 33. The ALJ issued a decision on March 11, 2020, finding Plaintiff not disabled and thus not entitled to DIB or SSI. AR 14. Plaintiff applied for review of the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on September 16, 2020, making the ALJ's decision the final agency decision. AR 2. Plaintiff now seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" (RFC). This is an assessment of
work-related activities that the claimant may still perform on a regular and
continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

For Plaintiff's DIB claim, the ALJ first determined that Plaintiff met the insured status requirements through September 30, 2018. AR 16. The ALJ then proceeded to the sequential analysis. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. *Id.* At step two, the ALJ identified Plaintiff's severe impairments as "methamphetamine abuse, PTSD [post-traumatic stress disorder], migraines, cervical degenerative disc disease, and hand numbness consistent with carpal tunnel syndrome." AR 17. At step three, the ALJ found that the combination of Plaintiff's severe and

non-severe impairments neither met nor equaled any listed impairment. *Id.* Next, the ALJ found

that Plaintiff had the RFC to perform:

> light work . . . except she can stand or walk up to 8 hours in an 8
> hour workday; she can frequently bilaterally handle and finger; she
> should avoid exposure to bright sunshine or flashing lights
> (computer monitors are OK); she would require low stress work
> meaning no production pace/conveyor belt work, work in a
> predictable work environment and with only simple occasional
> workplace changes.

AR 19.

At step four, the ALJ determined that Plaintiff cannot perform any past relevant work.

AR 25. At the fifth step, based on an exchange with a vocational expert, the ALJ found that

considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs

that exist in significant numbers in the national economy, including cleaner/housekeeper,

garment sorter, and warehouse checker. AR 26. The ALJ thus concluded that Plaintiff was not

disabled. AR 27.

## DISCUSSION

Plaintiff argues that the ALJ erred in considering Plaintiff's subjective symptom

testimony, evaluating law witness testimony, and evaluating the medical testimony of Plaintiff's

treating providers. Plaintiff also argues that the ALJ did not have the constitutional authority to

decide Plaintiff's case. The Court addresses the latter argument first.

### A.  Constitutional Authority

Plaintiff claims that the ALJ had no authority to deny this case. Plaintiff argues that the

provision of the Social Security Act governing removal of the Commissioner, 42 U.S.C.

§ 902(a)(3) (removal provision), violates the principle of separation of powers. Plaintiff states

that former Commissioner Saul appointed the ALJ who heard Plaintiff's case and that

Commissioner Saul was removed by President Biden for reducing the due process protections of

claimants and enacting policies that undermined and politicized social security benefits. Plaintiff argues that President Biden would have removed former Commissioner Saul sooner but for the removal provision and the need to get legal advice whether the President could remove former Commissioner Saul before the expiration of his tenure. Plaintiff argues that these facts show that Commissioner's Saul's removal was delayed by the unconstitutional removal provision and caused real, compensable harm to social security claimants. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021) (holding that a plaintiff seeking relief based on an unconstitutional removal provision must show that the restriction caused her harm).

The Commissioner concedes that the removal provision violates separation of powers to the extent the provision is construed as limiting the President's authority to remove the Commissioner without cause. The Commissioner maintains, however, that this does not automatically entitle Plaintiff to a rehearing of her social security claim. The Commissioner argues that, unlike Plaintiff asserts, the appointment of the adjudicating ALJ was not ratified by former Commissioner Saul but was ratified by Acting Commissioner Berryhill, who was removable at will. The Commissioner thus argues that the Supreme Court's conclusion in *Collins* that the removal restriction in that case did not extend to an Acting Director is dispositive.[2] Plaintiff did not respond to this argument or to the fact that the ALJ's appointment was ratified by Commissioner Berryhill and not Commissioner Saul.

In *Collins*, the Supreme Court examined the language of the Recovery Act, which governs the Federal Housing and Finance Agency, to determine whether the term "Director"

---

[2] The Commissioner also argues that Plaintiff cannot show the requisite direct harm from the removal restriction, among other arguments. Because the Court agrees with the Commissioner's argument regarding Acting Commissioner Berryhill, the Court does not reach the Commissioner's other arguments on this issue.

extended to an Acting Director. Noting that the Recovery Act's removal provision described the "Director," and that "Acting Director" was mentioned only later in the statute, the Court found the omission to be "telling" and held that the removal provision did not apply to the Acting Director. *Collins*, 141 S. Ct. at 1782. The same reasoning applies in this case. *See* 42 U.S.C. § 902(a)(3), (b)(4) (including only the term "Commissioner" in the removal provision of the Social Security Act but using "Acting Commissioner" in other provisions). Therefore, the removal provision did not extend to Acting Commissioner Berryhill, and its unconstitutionality did not affect her official actions.

## B.  Plaintiff's Testimony

### 1.  Standards for Reviewing the ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record,
efforts to work, daily activities, and other information concerning the intensity, persistence, and
limiting effects of an individual's symptoms; and (3) non-medical source statements, considering
how consistent those statements are with the claimant's statements about his or her symptoms
and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall
even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See
Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the
claimant's symptom testimony "is not substantiated affirmatively by objective medical
evidence." *Robbins*, 466 F.3d at 883.

An ALJ must specifically identify what evidence contradicted what testimony. *See
Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an
ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective
medical evidence,' without any 'specific findings in support' of that conclusion" (quoting
*Vasquez,* 572 F.3d, at 592). A court "cannot review whether the ALJ provided specific, clear,
and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never
identified *which* testimony she found not credible, and never explained *which* evidence
contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in
original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does
not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply
reciting the medical evidence in support of his or her residual functional capacity determination"
but must "specify which testimony she finds not credible," and the district court may not "comb
the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489 (quoting

*Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

### 2. The ALJ's Evaluation of Plaintiff's Testimony

Regarding Plaintiff's subjective symptom testimony, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 21.

The ALJ then summarized Plaintiff's testimony and Plaintiff's medical records. The ALJ did not specify what elements of Plaintiff's testimony were being rejected or discounted anywhere in the decision, nor did the ALJ link record evidence to any specific testimony. This was legal error. *See e.g. Brown-Hunter*, 806 F.3d at 494 (finding that the ALJ erred because she failed to specify the portions of testimony she discounted, and was thus unable to link testimony

to the particular statements in the record to support her findings). Notably, the Court cannot correct this error by parsing the record for links between rejected testimony and medical evidence. *Id.*

Even disregarding this error and considering the ALJ's general discussion of Plaintiff's testimony, the ALJ still erred. As discussed below, the reasons given by the ALJ are not clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's testimony.

### a. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be

relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

    The ALJ failed to connect any of Plaintiff's activities of daily living to the testimony that it supposedly undermined. Plaintiff primarily argues that the ALJ improperly relied on Plaintiff's care of her children because the ALJ did not develop a record of the nature, extent, and frequency of the childcare activities and never specified what elements of Plaintiff's testimony were undermined by her statements that she cared for her children. (*Cf. Trevizo v. Berryhill*, 871 F. 3d 664, 676 (9th Cir. 2017). The Commissioner argues that Plaintiff's statements that she cared for two young children, one of whom is disabled, made dinner for them nightly, and provided "constant" care during the summer months undermines the severity of Plaintiff's claimed limitations. Incidentally, the Commissioner fails to note that Plaintiff had a caretaker to help care for the child, and that the childcare she did do was "challenging." AR 877. Regardless, the ALJ failed to draw a connection between Plaintiff's testimony regarding her children and her alleged disabilities. If the ALJ discounts Plaintiff's testimony, but does not connect Plaintiff's activities with those portions of Plaintiff's testimony that it undermines, the ALJ commits legal error. *See Burrell*, 775 F.3d at 1138 (finding that the ALJ erred by "not elaborat[ing] on *which* daily activities conflicted with *which* part of [c]laimant's testimony") (emphasis in original). This same rule applies to the Commissioner's argument that Plaintiff's statements regarding a recent vacation to the Oregon coast with her children undermine her claims that anxiety and

paranoia made her isolate herself. The ALJ failed to connect this activity to any of Plaintiff's testimony.

Further, even if the Court considers the ALJ's discussion of Plaintiff's activities despite the ALJ's failure to link those activities to any alleged limitation, the activities are not a clear and convincing reason to discount Plaintiff's testimony. The ALJ highlighted that Plaintiff can do her own finances, dress, bathe, and eat. Those basic life functions are not inconsistent with Plaintiff's claims of headaches, back and neck pain, carpal tunnel, and anxiety. The ALJ commented that Plaintiff can do laundry, drive, and shop—these are the type of minimal activities that the Ninth Circuit repeatedly has stated generally do not warrant discounting testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Particularly with conditions such as migraines and mental health conditions in which a person will have good and bad days. *See Garrison*, 759 F.3d at 1017. Finally, the ALJ noted that Plaintiff went on one trip to the coast. A single trip, however, is insufficient to discount Plaintiff's testimony. Thus, Plaintiff's daily living activities are not a clear and convincing reason to discount Plaintiff's testimony.

### b. Noncompliance with Treatment

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 416.929(c)(3); 404.1529(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. §§ 416.930(b); 404.1530(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. See 20 C.F.R. §§ 416.930(c); 404.1530(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to

recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* SSR 16-3p, *available at* 2017 WL 5180304, at *9 (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

The Commissioner argues that the ALJ found that "Plaintiff was noncompliant with treatment recommendations." The Commissioner cites two incidents in the record: when Plaintiff was discharged from physical therapy in July 2018 for missing appointments and when  Plaintiff "went to two therapy sessions and stopped." The ALJ, however, did not cite Plaintiff's noncompliance with treatment recommendations as a reason to discount Plaintiff's testimony. The Court must disregard *post hoc* explanations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

At most, the ALJ noted Plaintiff's discharge from physical therapy for missing appointments. It is unclear whether the ALJ noted this as a reason to discount Plaintiff's testimony. If so, the ALJ ignored that Plaintiff returned to physical therapy a few months later. *See, e.g.*, AR 901. If the ALJ intended to reject Plaintiff's testimony for failure to seek treatment, the ALJ needed to explore Plaintiff's reasons for failing to comply with the treatment recommendation. *See* SSR 16-3p; *Smolen*, 80 F.3d at 1284. Plaintiff points out that the record

indicates that Plaintiff stopped going to her physical therapy appointments because she preferred a female therapist. AR 826. Plaintiff suggests that her history of severe trauma makes her uncomfortable with a male therapist, and this is a valid reason for stopping therapy. Regardless of the reasonableness of that explanation, the ALJ had a duty to consider Plaintiff's reasons for stopping therapy before drawing conclusions from Plaintiff's brief period of noncompliance but did not. Nor did the ALJ consider Plaintiff's return to physical therapy after only several months. Thus, this reason is not a clear and convincing reason to discount Plaintiff's testimony.

### c.  Lack of Support in the Objective Medical Evidence

The ALJ cited objective medical evidence in the record that the ALJ found supported the RFC and did not support an alleged disabling condition. The Commissioner, however, did not argue or defend the lack of objective medical evidence as a valid reason to discount Plaintiff's testimony. Accordingly, the Commissioner has waived any argument that this reason supported the ALJ's determination. *See, e.g.*, *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) (finding that the Commissioner's failure to defend the ALJ's assessment on certain grounds waived those issues).

Additionally, even if the Commissioner had not waived this reason, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Because the Court has rejected the other two reasons proffered by the ALJ, this reason, standing alone, would

not support the ALJ's evaluation of Plaintiff's subjective symptom testimony. Thus, the ALJ erred in considering Plaintiff's testimony.

## C.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant,

and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff provided a lay witness statement from a friend, Cadie Hammons, in support of Plaintiff's alleged disabilities. AR 263-270. The ALJ failed to mention the lay statements in the determination of Plaintiff's RFC. This was error. *See Stout*, 454 F.3d at 1053. The Commissioner asserts that the error was harmless, arguing that because the ALJ properly discounted Plaintiff's testimony the ALJ's reasons apply equally to the lay witness testimony. Because the Court has found that the ALJ did not properly discount Plaintiff's testimony, the ALJ's error in ignoring the lay witness testimony is not harmless, even if the lay witness testimony was similar to Plaintiff's testimony (which Plaintiff disputes).

**D.  Medical Evidence**

Plaintiff filed an application for SSI on February 28, 2018 and an application for DIB on April 30, 2018. AR 232-34, AR 221-31. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920(c) governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special

deference to certain opinions from treating sources. Instead, the ALJ considers the "supportability" and "consistency" of the opinions, followed by additional sub-factors,[4] in determining how persuasive the opinions are. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence, and the source's explanation for the opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with other medical opinions and prior administrative findings. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ is not required to explain how he or she considered other secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3); 416.920c(b)(2)-(3). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

Plaintiff argues that the ALJ improperly rejected the opinions of two treating medical providers, Dawna Flanagan, QMHP, and Lynn Willis, PMHNP. These providers expressly agreed with the Mental Residual Functional Capacities (MRFC) assessment completed by Lori Russell, MSW, dated February 22, 2018. AR 499-502. Ms. Russell's opinion suggested that Plaintiff would be absent from the workplace six or more times per month due to mental health impairments, and Ms. Russell rated Plaintiff markedly impaired in 12 of the categories on the

---

[4] The secondary factors include: relationship with claimant; specialization; and "[o]ther factors." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

MRFC form. AR 499-501. The ALJ rejected the opinions of the providers, stating that they were "not supported by actual treatment." AR 25. The ALJ also concluded that Ms. Russell's opinion was "not consistent with the weight of the record," namely Plaintiff's "largely normal mental status exams." AR 25. The ALJ cites evidence in the record to support this finding, including mental status evaluations during 2014 and 2019 that state that Plaintiff was clean and dressed appropriately, was able to maintain attention and eye contact, used normal speech and language, and was cooperative. AR 514, 845, 851, 858, 868.

Plaintiff contends that the ALJ's analysis could only have been based on improper cherry-picking of the record. Plaintiff cites instances in the record that reflect Plaintiff's mental health challenges. *See e.g.* AR 519-20 (noting a history of profound childhood abuse and Plaintiff's agitated, fidgety, anxious, and tearful manner); AR 527 (recounting Plaintiff's "flashbacks and/or bad dreams," her tendency to wake up screaming, a newly developed nervous twitch, and hyperalertness); AR 568 (noting that Plaintiff appeared anxious with restless body movements, had a blunted affect, and was experiencing nightmares); AR 530 (concluding that Plaintiff was "not able to fulfill obligations and/or complete tasks," and that her mood was "dysregulated").

Federal appellate review of an ALJ's decision is deferential to the determinations of the Commissioner. *Treichler*, 775 F.3d at 1098. The Commissioner's decision must be upheld unless the decision "contains legal error or is not supported by substantial evidence." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tomasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). For a finding of substantial evidence, the threshold for evidentiary sufficiency is not high. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). Although Plaintiff does offer substantial evidence to support Ms. Russell's findings, the "key question" for the Court "is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). The ALJ's numerous citations to the record constitute substantial evidence. Plaintiff's interpretation of the evidence may be rational, but so is the ALJ's interpretation of the evidence, and when there is more than one rational interpretation of the evidence, the Court upholds the ALJ's interpretation. *See Burch*, 400 F.3d at 679. Thus, the ALJ did not err in evaluating Ms. Russell's opinion.

**E.  Remand**

Plaintiff seeks remand for an award of benefits or for further proceedings. Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the

record is free from conflicts and ambiguities, and there is any useful purpose in further

proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has

been fully developed and there are no outstanding issues left to be resolved does the district court

consider whether the ALJ would be required to find the claimant disabled on remand if the

improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its

discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however,

and is not required to credit statements as true merely because the ALJ made a legal error. *Id.*

at 408.

      The ALJ committed harmful error by improperly discounting portions of Plaintiff's

testimony and by failing to consider Ms. Hammonds' lay testimony. Considering the record as a

whole, however, there remains conflicts and ambiguities. Further proceedings will allow the ALJ

to resolve these conflicts by considering the elements of Plaintiff's testimony that were

improperly discounted, and by incorporating the lay testimony into the analysis and ultimate

disability determination. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (holding

that "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence"). For

that reason, remand for further proceedings is appropriate.

## CONCLUSION

      The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings consistent with this Opinion and Order.

      **IT IS SO ORDERED**.

      DATED this 22nd day of March, 2022.

                          /s/ *Michael H. Simon*
                          Michael H. Simon
                          United States District Judge